Amir J. Goldstein, Esq. (SBN 255620)
The Law Offices of Amir J. Goldstein, Esq.
8032 West Third Street, Suite 201
Los Angeles, CA 90048
Tel 323.937.0400
Fax 866.288.9194
ajg@consumercounselgroup.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GISELE FOURNIER and REJEAN FOURNIER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DIAMOND RESORTS INTERNATIONAL CLUB, INC. and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>CLASS ACTION COMPLAINT FOR DAMAGES |

Plaintiffs, by and through their attorney, Amir J. Goldstein, Esq., as and for their complaint against the Defendant, DIAMOND RESORTS INTERNATIONAL CLUB, INC., allege as follows:

**INTRODUCTION**

1. This is an action for damages brought by individual consumers and on behalf of a class for Defendant's violations of the Truth in Lending Act or 15 U.S.C. §§1601 et seq., the Telephone Consumer Protection Act of 1991 or 47 U.S.C. §227 et seq. ("TCPA"), the California False Advertising Act or California Business and Professions Code §§17500, et seq., California Business and Professions Code

§§17200, et seq., the Consumers Legal Remedies Act ("CLRA") or California Civil Code §§1750 et seq. and California Welfare and Institutions Code §15610.70(a)

## PARTIES

2. Plaintiffs are natural persons residing in Riverside County, California and are consumers as defined by Cal. Bus. & Prof. Code §17201.

3. Upon information and belief, Defendant Diamond Resorts International Club, Inc. is a company whose state of incorporation is Nevada and whose principal place of business is in the state of Nevada.

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper in this district pursuant to 28 U.S.C. § 1391 et seq., as the Defendant conducts business, the nature of which subjects the Defendant corporation to jurisdiction in this district and the transactions that give rise to this action occurred, in substantial part, in this district.

## FACTUAL ALLEGATIONS

5. Plaintiffs reallege paragraphs 1 through 4 as if fully restated herein.

6. That upon information and belief, Defendant sells timeshare contracts.

7. That at a time unknown herein, Plaintiffs obtained a "membership" with the Defendant whereby Plaintiffs would acquire timeshare "points" which could then be redeemed in exchange for the right to use and occupy accommodations at various resorts.

8. That Plaintiffs believed that their monthly payments went solely toward the purchase of timeshare "points."

9. That Plaintiffs were led to believe that the timeshare resorts were made available only to other timeshare members and not to the general public.

10. That whenever Plaintiffs would check into any of the aforementioned resorts, Plaintiffs would be forced to speak with concierge personnel who would then pressure the Plaintiffs to make an appointment for an owners "update" meeting.

11. That Plaintiffs grew dissatisfied with their membership due to the unavailability of accommodations at various resorts, Plaintiffs' inability to make reservations at certain times of the year, the hard sale tactics and pressure they would encounter and the subpar customer service Plaintiffs would receive whenever they would stay at one of the Defendant's resorts.

*Count One*

12. That on or about July 2015, Plaintiffs reached out to one of Defendant's sales associates to discuss their dissatisfaction with their membership.

13. That Plaintiffs informed Defendant's agent that they were unhappy with the reservation process and that Plaintiffs could not get reservations for the dates they wanted at the resorts that they were interested in visiting.

14. That in response, Defendant's agent advised Plaintiffs that if they upgraded their membership to "platinum" level, they would get "superior" customer service.

15. That Defendant's agent deceptively advised Plaintiffs to attend an "update" meeting in order to have their grievances addressed and customer service issues resolved.

16. That in reliance on the representations made by Defendant's agent, the Plaintiffs reluctantly agreed to attend the "update" meeting, in the hopes that attending the meeting would resolve their grievances.

17. That Plaintiffs felt extremely uncomfortable at said meeting.

18. That after briefly speaking with some of Defendant's agents, Defendant's agents immediately laughed at Plaintiff Gisele Fournier for not bringing his credit card to the meeting.

19. That Plaintiffs felt coerced to go back to their room and get a credit card because they felt that no one would help them otherwise.

20. That upon their return to the update meeting, Plaintiffs were passed from one sales associate to another for over four hours.

21. That Defendant's agents continued to intimidate the Plaintiffs.

22. That Defendant's agents proceeded to apply hard pressure sales tactics on the Plaintiffs.

23. That Defendant's agents advised Plaintiffs that their reservation problems, the unavailability of various resorts and other poor customer service issues would be resolved if the Plaintiffs upgraded their membership.

24. That Plaintiffs felt bullied, manipulated and intimidated into signing a new contract upgrading their membership with the Defendant.

25. That Defendant subjected the Plaintiffs to a high pressure situation which caused the Plaintiffs a great amount of stress, embarrassment and humiliation.

26. That Plaintiffs felt that they could not leave the meeting unless they signed up for an upgrade to their membership.

27. That Defendant's agents failed to advise Plaintiffs of their right to cancel the upgrade and the process for terminating their membership.

28. That Defendant's agents failed to disclose to Plaintiffs the extent of the debt they would incur as a result of upgrading their membership.

29. That upon information and belief, Defendant regularly engages in a practice of subjecting consumers like the Plaintiffs to high pressure situations filled with hard sell tactics in order to coerce them into entering into timeshare memberships and upgrades.

Class Action Complaint for Damages

30. That upon information and belief, Defendant uses false advertising and misrepresentations to induce consumers like the Plaintiffs to enter into membership contracts and sign up for upgrades that they never wanted.

31. That upon information and belief, Defendant regularly fails to make material disclosures in order to mislead consumers like the Plaintiffs as to the status of their accounts and membership benefits.

32. That Defendant used deceptive sales practices and made numerous oral misrepresentations and false statements during timeshare sales presentations, including but not limited to the "update" meetings.

33. That as a result of Defendant's deceptive sales tactics and misrepresentations, Plaintiffs were then charged over $2,000.00 on their credit card to upgrade their membership.

34. That as a result of said upgrade, Plaintiff's monthly membership dues nearly doubled.

35. That notwithstanding their "platinum" upgrade, Plaintiffs continued to receive poor customer service and subpar accommodations and encountered the same problems as they did prior to their upgrade.

*Count Two*

36. That as a result of Defendant's continued failure to provide Plaintiffs with the services as promised in the update meeting, Plaintiffs wanted to terminate their membership.

37. That Plaintiffs, in one of their attempts to terminate their contract over the phone, were transferred from one department to another for over an hour, only to be told at the end of the phone call that they could not terminate their contract because the time had already passed for terminations.

Class Action Complaint for Damages

38. That on or about July 2016, Plaintiffs, in another attempt to terminate their contract, contacted Defendant via internet chat.
39. That upon information and belief, Defendant instructed the Plaintiffs to contact the Hospitality Management Department in order to terminate their membership.
40. That during said chat, Plaintiffs attempted to reach the Hospitality Management, as previously instructed, but Defendant's agent told Plaintiffs that there was no contact number for said department.
41. That Defendant's instructions to the Plaintiffs were confusing, contradictory and ineffective.
42. That the Defendant repeatedly gave the Plaintiffs the run around, often with conflicting and confusing information, and failed to connect the Plaintiffs to the correct department in order for the Plaintiffs to process their request to terminate their contract.
43. That upon information and belief, Defendant engages in a practice whereby it purposely makes terminating membership contracts difficult, if not almost impossible, for the average consumer.
44. That on or about August 2016, Plaintiffs mailed Defendant a letter advising Defendant of their desire to terminate their membership and that Defendant no longer had the authority to debit Plaintiffs' account.
45. That in said letter, Plaintiffs also informed Defendant that they had cancelled all future reservations and requested reimbursement for any and all proper credits associated with their timely cancellations along with the 2016 HOA fees that had already been paid by Plaintiffs.

*Count Three*

46. That shortly after the Plaintiffs mailed their request to terminate their membership, Defendant mailed Plaintiffs a "Monthly Loan Statement" referencing "Account #0023724547" with an invoice date of "08/22/2016" and a balance due of $813.77.

47. That the Due Date listed on the "08/22/2016" statement was "08/12/2016."

48. That according to the Defendant's "Monthly Loan Statement" dated 08/22/2016, any payments received after that date would result in additional fees, thereby increasing the balance due to $844.77.

49. That contrary to Plaintiffs' understanding that their payments were going toward the purchase of "points," Defendant's "Monthly Loan Statement" indicated that Plaintiffs owed a "Principal Balance" of over $45,000 and that at least $6,000 had already been paid by Plaintiffs toward interest fees alone.

50. That the Defendant's statements to the Plaintiffs contained confusing and conflicting information.

51. That as a result of Defendant's correspondence, Plaintiffs were misled, deceived, and misinformed as to the status of their account and the nature of their membership.

*Count Four*

52. That on or about August 2016, notwithstanding Plaintiffs' notice requesting termination of their membership, Defendant mailed Plaintiffs a letter dated August 22, 2016, referencing "Loan Number 0023724547" advising Plaintiffs that they had not received a payment on said loan.

53. That in response, Plaintiffs immediately mailed Defendant a letter dated August 28, 2016 reiterating their request to terminate their membership due to health

reasons, request for reimbursement of 2016 HOA fees and credits for timely cancellation of reservations.

54. That Plaintiffs mailed Defendants yet another letter dated September 7, 2016 informing Defendant of their need to terminate their membership due to health reasons.

55. That on or about September 2016, more than approximately three months after Plaintiffs expressed their desire to terminate their membership, Defendant mailed Plaintiffs three letters all dated September 12, 2016.

56. That said letters made no reference to Plaintiff's account number or loan number, but instead listed "Contract No. 2594250, 17188852, 16680988" respectively.

57. That each form letter contained the following language: "After review and consideration, we are unable to grant your request as neither the management company, nor the developer, are able to allow a surrender of ownership within the Association at this time."

58. That Defendant did not cite any reasons for refusing to terminate Plaintiffs' membership as requested in any of the form letters.

59. That in each form letter, Defendant advised Plaintiffs that they would "***remain contractually obligated*** for payment of fees." (emphasis in the original)

60. That upon information and belief, Defendant engages in the regular practice of delaying requests to terminate membership contracts in order for additional fees and costs to accrue and to force members like the Plaintiffs through a downward spiral of increasing debt.

*Count Five*

61. That shortly after sending Plaintiffs the form letters dated September 12, 2016, Defendant mailed Plaintiffs a letter dated September 15, 2016 referencing "Loan Account Number 707968" (an account number completely different than any of

Class Action Complaint for Damages

the account numbers or contract numbers referenced in its prior correspondence to the Plaintiffs) informing Plaintiffs that it had agreed to "accept a Mutual Release" on Account 707968.

62. That notwithstanding Defendant's "release," Defendant mailed Plaintiffs another letter dated September 16, 2016 demanding payment on their account.

63. That on or about September 23, 2016, Defendant's agent advised Plaintiffs via email that the Defendant would not release Plaintiffs on the following contracts: 1247990, 1487920, 1565109 and 2014524.

64. That the September 23, 2016 email from the Defendant contained yet another set of account numbers that had not previously been referenced in any of Defendant's prior statements or correspondence to the Plaintiffs.

65. That on or about October 2016, Defendant mailed Plaintiffs another set of three form letters referencing "Contract No. 2594250, 17188852, 16680988" respectively.

66. That Defendant's form letters, dated October 4, 2016, advised Plaintiffs that Defendant would be unable to grant their request to terminate their membership without providing Plaintiffs any explanation for their refusal to do so.

67. That Defendant continued to mail Plaintiffs letters demanding payment without addressing Plaintiffs' request to terminate their membership contact.

68. That Defendant's correspondence to Plaintiffs contain confusing, conflicting and misleading information regarding Plaintiff's membership.

69. That Defendant continued to send Plaintiffs additional form letters containing the same, conflicting and confusing information regarding Plaintiff's membership.

70. That upon information and belief, Defendant engages in the practice of mailing statements to members with multiple account numbers in order to confuse and mislead members as to the status of their accounts.

*Count Six*

71. That on or about December 2016, Plaintiffs mailed Defendant a letter dated December 28, 2016 advising Defendant to cease their "harassing phone calls to [their] home and [their] cell phones."

72. That notwithstanding Plaintiffs' request that Defendant cease their telephonic communications to Plaintiffs, Defendant continued to call Plaintiffs on their telephone land lines as well as on their cell phones.

## AS AND FOR A FIRST CAUSE OF ACTION

73. Plaintiffs reallege paragraphs 1 through 72 as if fully restated herein.

74. That Plaintiffs revoked their consent to Defendant's placement of telephone calls to Plaintiffs' cellular telephones by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

75. That Defendant continued to place several dunning telephone calls to Plaintiff's cellular phones using an automated telephone dialing system and/or a pre-recorded or artificial voice.

76. That none of Defendant's telephone calls placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

77. That Plaintiffs were charged for the phone calls made by Defendant to their cellular phones.

78. That Defendant willfully or knowingly violated the TCPA, by placing non-emergency telephone calls to Plaintiffs' cellular telephones using an automatic telephone dialing system or pre-recorded or artificial voice notwithstanding Plaintiffs' previously revoked consent.

79. That as a result of Defendant's violations of the TCPA, Plaintiffs suffered stress, sleepless nights, aggravation and emotional distress.

80. That as a result of Defendant's violations of the TCPA, Plaintiffs are entitled to $500.00 for each artificial and/or prerecorded telephone call pursuant to 47 U.S.C. §227(b)(3)(B).
81. That as a result of Defendant's violations of the TCPA, Plaintiffs are entitled to a maximum of treble damages pursuant to 47 U.S.C. §227(b)(3).
82. That as per 47 U.S.C. §227 et seq. and as a result of the above violations, the Defendant is liable to the Plaintiffs for actual damages and statutory damages in an amount to be determined at the time of trial.

## AS AND FOR A SECOND CAUSE OF ACTION

83. Plaintiffs reallege paragraphs 1 through 82 as if fully restated herein.
84. The Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), California Civil Code § 1788, et seq., prohibits unfair and deceptive acts and practices in the collection of consumer debts.
85. That upon information and belief, Defendant has attempted to collect on amounts that are falsely inflated, not authorized by agreement and/or not permitted by law.
86. By its acts and practices as hereinabove described, the Defendant has violated the Rosenthal Act as follows, without limitation:
    i. By making the false representation that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation, Defendants have violated §1788.13(e);
    ii. By making the false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made, Defendants have violated §1788.13(j);

  iii. By failing to include certain debt collection notices and disclosures required by law;

  iv. By sending multiple dunning notices, (many of which contained confusing, conflicting and misleading information) and by incessantly placing collection calls to Plaintiffs' phones, Defendant unlawfully continued its attempts to collect on a debt in dispute and in light of Plaintiffs' request to terminate their contract.

87. Pursuant to § 1788.30 of the Rosenthal Act, Plaintiffs are entitled to recover their actual damages sustained as a result of the Defendant's violations of the Rosenthal Act. Such damages include, without limitation, statutory damages, any actual damages sustained, other resulting monetary losses and damages, and emotional distress suffered by Plaintiffs, which damages are in an amount to be proven at trial.

88. In addition, because the Defendant's violations of the Rosenthal Act were committed willingly and knowingly, Plaintiffs are entitled to recover, in addition to their actual damages, penalties of at least $1,000 per violation as provided for in the Act.

89. Pursuant to § 1788.30(c) Rosenthal Act, Plaintiffs are entitled to recover all attorneys' fees, costs and expenses incurred in the bringing of this action.

## AS AND FOR A THIRD CAUSE OF ACTION

90. Plaintiffs reallege paragraphs 1 through 89 as if fully restated herein.

91. The California Business and Professions Code section 17500, et seq., or the California False Advertising Act, prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

92. That upon information and belief, Defendant misled the Plaintiffs by making misrepresentations and untrue statements about the nature of "Owners Updates" events.

93. That upon information and belief, Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiffs into entering contracts that they would not have assented to but for Defendant's high pressure sales tactics.

94. That Plaintiffs reasonably relied upon Defendant's representations regarding the nature of the "Owners Update" and in reasonable reliance on Defendant's misrepresentations, Plaintiffs attended what they thought were mere "Owners Updates" when they were in fact sales presentations where they were pressured into making purchases.

95. That although the Plaintiffs were led to believe that their grievances would be addressed at the" update" meeting, they were coerced into signing up for an upgrade that they had no interest in, but for Defendant's false representations and high pressure sales tactics.

96. That as a result of Defendant's misleading and false advertising, Plaintiffs have suffered injury in fact and have lost money or property.

**AS AND FOR A FOURTH CAUSE OF ACTION**

97. Plaintiffs reallege paragraphs 1 through 96 as if fully restated herein.

98. California Civil Code § 1750 et seq., or The Consumers Legal Remedies Act, prohibits various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family or household purposes.

Class Action Complaint for Damages

99. That the Plaintiffs have suffered injury in fact and have lost money as a result of the Defendant engaging in the acts hereinabove described.

## AS AND FOR A FIFTH CAUSE OF ACTION

100. Plaintiffs reallege paragraphs 1 through 99 as if fully restated herein.

101. The California Business and Professions Code §17200, et seq., prohibits unfair competition, which includes any unlawful, unfair or fraudulent business act.

102. That Defendant, by engaging the acts hereinabove described, has committed violations under the TCPA, the California False Advertising Act and the Consumers Legal Remedies Act; that said acts are therefore per se violations of the California Business and Professions Code Section 17200 et seq.

103. That the harm caused by Defendant's conduct outweighs any benefits that Defendant's conduct may have.

104. That consumers like the Plaintiffs are likely to be deceived, and that the Plaintiffs were in fact deceived, by Defendant's conduct.

105. That the Defendant has been unjustly enriched by committing said acts.

106. That as a result of Defendant's conduct, Plaintiffs have been harmed and has suffered damages in the form of monetary losses, extreme embarrassment, humiliation, shame, stress, anxiety, aggravation and sleepless nights.

107. That as a direct and proximate result of Defendant's unlawful, unfair and fraudulent business practices as alleged herein, Plaintiffs have suffered substantial injury in fact and lost money and/or property.

108. That pursuant to California Business and Professions Code § 17200, et seq., Plaintiffs are entitled to recover their actual damages and restitution.

## AS AND FOR A SIXTH CAUSE OF ACTION

109. Plaintiffs reallege paragraphs 1 through 108 as if fully restated herein.

110. California Welfare and Institutions Code §15610.70(a) defines undue influence generally as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity."

111. That the Plaintiffs were particularly vulnerable due to their age, emotional distress and impaired health. That upon information and belief, Defendant knew or should have known of the Plaintiffs' vulnerability.

112. That the Defendant exercised apparent authority over the Plaintiffs.

113. That the Defendant used intimidation and/or coercion to initiate changes in Plaintiff's personal and/or property rights, effected changes at inappropriate times and places, and claimed of expertise in effecting changes.

114. That as a result of Defendant's conduct, the Plaintiffs suffered dire economic consequences and were forced to forgo their prior intent or course of conduct or dealing.

115. That pursuant to California Welfare & Institutions Code § 15657.5, Plaintiffs are entitled to attorneys fees and costs in addition to compensatory damages and all other remedies otherwise provided by law.

## AS AND FOR A SEVENTH CAUSE OF ACTION

116. Plaintiffs reallege paragraphs 1 through 115 as if fully restated herein.

117. That Defendant breached its contract with the Plaintiffs by the following acts which include, but are not limited to: failing to provide Plaintiffs with adequate accommodations as requested, failing to provide Plaintiffs with satisfactory customer service, failing to resolve Plaintiffs' issues through the "update" meeting, and engaging in further collection activity on a disputed account.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

118. Plaintiffs reallege paragraphs 1 through 117 as if fully restated herein.

119. That Defendant committed fraud in the inducement through the following acts, which include but are not limited to:

   i. Defendant represented that by attending the "update" meeting and signing up for a membership upgrade, Plaintiffs issues with Defendant's reservation process, accommodation availability and poor customer service would be resolved;

   ii. That Defendant knew its representations to the Plaintiffs were not in fact true;

   iii. The Defendant used said representations to persuade the Plaintiffs into signing up for a membership upgrade;

   iv. That the Plaintiffs were persuaded to and reasonably relied upon Defendant's representations to signing up for a membership upgrade; and

   v. Plaintiffs would not have signed up for the membership upgrade if they had known Defendant's representations were false.

## CLASS ALLEGATIONS

120. Plaintiffs repeat and reallege each and every allegation set forth above as if reasserted and realleged herein.

121. The first cause of action is brought on behalf of Plaintiff and the members of a class.

122. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) on behalf of a class (the "Class") defined as follows:

All persons in the United States whose cell phone number, at any time between the date that is four years prior to the filing of this action and the present,

Defendant or some person on Defendant's behalf caused to be called using an artificial or prerecorded voice and/or equipment with the capacity to dial numbers without human intervention.

123. Plaintiffs are members of the Class. Plaintiffs received autodialed and/or artificial or prerecorded voice calls to their cell phones from or on behalf of Defendant.

124. The Class is so numerous that joinder of all members is impracticable. On information and belief, Defendant caused more than 100 cell phone numbers to be called in the four years prior to the filing of this action using an autodialer and/or artificial or prerecorded voice. While the total number and identity of the Class members is at this point unknown, such information is, on information and belief, readily obtainable through the records of Defendant or its carrier(s), and could number in the thousands.

125. Common questions of law or fact exist as to all members of the Class and predominate over any questions solely affecting any individual members. Such questions common to the Class include but are not limited to:

a. Whether Defendant used an "automatic telephone dialing system" or "artificial or prerecorded voice" as such terms are defined or understood under the TCPA and applicable Federal Communications Commission ("FCC") regulations and orders;

b. Whether Defendant's conduct and policy of calling the cell phones of Plaintiff and the other members of the Class using equipment with the capacity to dial numbers without human intervention and/or an artificial or prerecorded voice constitutes unfair, unconscionable, and/or harassing conduct in connection with the attempted collection of a debt;

c. Damages, which can be calculated by a mechanical formula, as well as whether Defendant's violations were performed willfully or knowingly such as to warrant treble damages under Section 227(b)(3) of the TCPA.

126. Plaintiffs' claims are typical of the claims of the other members of the Class. The factual and legal bases of Defendant's liability to Plaintiffs and the other members of the Class are the same: Defendant violated the TCPA by causing the cellular telephone number of each member of the Class, including Plaintiffs, to be called using an automatic telephone dialing system and/or artificial or prerecorded voice, in connection with the attempted collection of debts.

127. Plaintiffs and their attorney will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that might conflict with the interests of the Class. Plaintiffs will vigorously pursue their claims, and they have retained counsel competent and experienced in class and complex litigation, including cases under the Telephone Consumer Protection Act

128. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy alleged herein. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual lawsuits would entail. Absent a class action, many members of the Class will likely not even obtain relief, whether because they are unaware of their right to relief from the harm caused by Defendant's illegal practices, due to the prohibitive time and monetary cost inherent in individual litigation, or otherwise. Courts nationwide frequently grant class certification in cases brought under the TCPA; no difficulties are likely to be encountered in the management of this case as a class action. If the class is certified under Rule 23(b)(3), Plaintiff anticipates the distribution of mail notice to each class member at their last-known address, or by such other practicable means as circumstances permit.

Class Action Complaint for Damages

129. That Defendant—in making prerecorded autodialer calls to the cell phones of Plaintiffs and the other members of the Class—has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, warranting injunctive or corresponding declaratory relief for the Class as a whole. Prosecution of separate, piecemeal actions by individual members of the Class, should they even realize that their rights have been violated, would create the risk of inconsistent results for the same unlawful conduct and practices.

**WHEREFORE,** Plaintiffs respectfully pray that judgment be entered against Defendant in the amount of:

(a) An order certifying the Class defined above, appointing Plaintiffs as class representatives, and appointing their attorney as class counsel;

(b) Statutory damages and actual damages pursuant to 47 U.S.C. §227 in an amount to be determined at the time of trial on behalf of the class on the first cause of action.

(c) Statutory damages and actual damages provided by statute, including, but not limited to: 47 U.S.C. §227et seq., 15 U.S.C. §§1601 et seq., California Business and Professions Code §§17500, et seq., California Business and Professions Code §§17200, et seq., California Civil Code §§1750 et seq.

(d) Treble damages pursuant to 47 U.S.C. §227.

(e) Treble damages pursuant to California Civil Code § 3345.

(f) Equitable and injunctive relief.

(g) Restitution.

(h) Costs and reasonable attorney's fees provided by statute, (including California Welfare & Institutions Code § 15657.5), common law and/or the Court's inherent power.

(i) For such other and further relief as may be just and proper.

Plaintiffs request trial by jury on all issues so triable.

Dated: May 10, 2017              AMIR J. GOLDSTEIN, ESQ.

   /S/ Amir J. Goldstein_____
Amir J. Goldstein, Esq.
**Attorney for Plaintiffs**
8032 West Third Street, Suite 201
Los Angeles, CA 90048
Tel 323.937.0400
Fax 866.288.9194

Class Action Complaint for Damages