# EXHIBIT A

# EXHIBIT A


17188852-DRUSC Wrap Purchase and Security Agreement - California

# DIAMOND RESORTS U.S. COLLECTION

## PURCHASE AND SECURITY AGREEMENT
(California)

THIS PURCHASE AND SECURITY AGREEMENT (this "Agreement") is made and entered into this 28th day of July, 2015 by and between Diamond Resorts U.S. Collection Development, LLC, a Delaware limited liability company ("Seller"), whose address and principal place of business is 10600 West Charleston Blvd., Las Vegas, Nevada 89135, and REJEAN PIERRE FOURNIER and GISELE FOURNIER (whether one or more, "Purchaser", collectively with Seller, the "Parties"). In the event of more than one Purchaser, ownership shall be as joint tenants with rights of survivorship, and not as tenants-in-common.

Seller agrees to sell and Purchaser agrees to purchase the following described property (the "Membership") upon the following price, terms, and conditions, including but not limited to the Further Terms and Conditions set forth herein:

Membership in Diamond Resorts U.S. Collection (the "Collection"), which includes (i) membership in the Diamond Resorts U.S. Collection Members Association, a non-stock, non-profit Delaware corporation (the "Association"), whose principal place of business is located in Clark County, Nevada, and (ii) the following Points for use in the Collection:

| Points: | Initial Use Year: |
|---|---|
| 5000 | 2016 |

### BASE PURCHASE TERMS
### ITEMIZATION OF AMOUNT FINANCED (for financed sales)

| | | |
|---|---|---|
| 1. | Purchase Price of Membership: ("Purchase Price") | $24,850.00 |
| 2. | Initial Cash Deposit: | $2,486.00 |
| 3. | Less *trade in value* of any Timeshare Interest conveyed to the seller as part of your purchase (applies only to "upgrade" sales) | |
| | a. Ascribed Equity Value of Timeshare Interest(s): | $0.00 |
| | b. Other Amounts Owed: | $0.00 |
| | c. Total Trade in value: (line a minus line b) | $0.00 |
| | d. Other Amounts Paid at closing: | $0.00 |
| 4. | Additional Cash Deposits Due: | |
| | a. On or before | $0.00 |
| | b. On or before: | $0.00 |
| 5. | Total Down Payment (total of lines 2, 3.c, 4.a., and 4.b.): | $2,486.00 |
| 6. | Credits (if any): | $0.00 |
| 7. | Base Amount: (line 1 minus line 5 minus line 6) | $22,364.00 |
| 8. | Financed Closing Costs payable to_____ | $750.00 |
| 9. | Amount Financed or Due in Cash at Closing (line 7 plus line 8): ("Unpaid Balance") | $23,114.00 |
| 10. | Current Outstanding Principal Balance plus Accrued but Unpaid Interest Due on Existing Timeshare Interest: | $23,979.87 |
| 11. | Total Amount Financed or Due in Cash at Closing (line 9 plus line 10): ("Unpaid Balance") | $47,093.87 |

#### Closing Costs

| | | |
|---|---|---|
| A. | Closing Costs to Seller | $40.00 |
| B. | Closing Costs to Purchaser | $825.00 |
| C. | Total Estimated Closing Costs | $865.00 |

#### Other Costs

| | | |
|---|---|---|
| D. | Initial Use Year's Association standard Assessments (estimated): Purchaser will be billed for Assessments separately by the Association | 730.00 |

DMWEST #8065200 v6

Exhibit A
Page 5

Purchaser desires to pay the Unpaid Balance in lawful currency of the United States, by using the following method (check one), subject to the Terms and Conditions contained herein:

☐ Cash Payment or Third-Party Financing      ☒ Seller Financing

☐ Credit Card Type:_____ Number:_____ Expiration Date:_____

If Purchaser obtains purchase money financing from Seller, Purchaser will also be responsible for the payment of all charges incident to the extension of credit, which charges are specified in the Truth-In-Lending Disclosure Statement furnished to Purchaser, including but not limited to monthly installments of principal and interest, late charges (if applicable), and a monthly collection fee of Six dollars ($6.00). Finally, Purchaser will be required to pay the Closing Costs to Seller and Other Costs specified above. Such closing costs are the same for cash and credit sales hereunder.

Monthly Payment Method:

☒ Statement      ☐ SurePay (Credit or Debit Card)   ☐ SurePay (Checking or Savings Account)

Enrollment in THE Club® Exchange Program:

Purchaser acknowledges that he or she will automatically be enrolled in THE Club® exchange program ("THE Club®"). See Section EXCHANGE PROGRAMS: below for additional details.

Purchaser Contact:

Purchaser hereby advises Seller that Purchaser is willing to receive information regarding Purchaser's financing or for his or her membership in the Collection or THE Club® by means of (select one):

☒ Mail      ☐ E-mail

If Purchaser has elected to receive information by E-mail, Purchaser represents that Purchaser has a computer and all related hardware and software required to open, display, save and print a PDF file that does not exceed 2 MB in size.

**FURTHER TERMS AND CONDITIONS**

1. **DEFINITIONS:**

Unless the context suggests otherwise, capitalized terms shall have the meanings set forth in the capitalized terms shall have the meanings set forth in the Declaration attached to that certain Trust Agreement for the Collection executed February 28, 2006 ("Declaration"), as may be amended or modified from time.

2. **PAYMENT OF PURCHASE PRICE:**

(a) Purchaser may pay for the Membership in cash or through credit from Seller, subject to Seller's credit approval ("Financing"). If Purchaser receives Financing from Seller, then Purchaser will be required to execute and deliver an installment Promissory Note (the "Note") payable to the order of Seller in the amount of the Unpaid Balance, and grant the first priority Seller Security Interest (defined below) that secures the payment of the Note and encumbers Purchaser's Membership, as well as certain other documents and instruments which Seller, in its sole discretion, deems reasonably necessary or appropriate to secure Purchaser's payment of the Note. Purchaser will be subject to all of the terms, provisions, and conditions described and set forth in all such documents and instruments.

(b) If Purchaser requests Financing, Seller may, but is not required to, agree to finance Purchaser's purchase. Purchaser promises that all personal financial and other information submitted to Seller is and will be accurate, and Purchaser authorizes Seller to make credit inquiries regarding Purchaser, whether through a consumer reporting agency or other means. Purchaser agrees to provide immediate written notice to Seller of any material adverse change in Purchaser's financial condition that occurs prior to Closing (as defined below). If Purchaser makes good faith efforts to obtain purchase money financing but is unable to qualify for Financing within 10 days following Seller's acceptance of this Agreement, Purchaser shall be entitled to terminate this Agreement and receive a refund of any and all payments made by Purchaser hereunder (without interest) or, at Purchaser's option, to consummate the transaction contemplated hereby by paying the entire Unpaid Balance in cash at Closing. If Purchaser is unable to qualify for Financing within such 10 day period, Seller shall provide written notice thereof to Purchaser, whereupon Purchaser shall promptly notify Seller whether Purchaser elects to terminate this Agreement or consummate the transaction as provided in the preceding sentence. If Purchaser fails to give any notice to Seller within 20 days after Purchaser's receipt of Seller's notice that Purchaser does not qualify for Financing, Seller may at any time thereafter terminate this Agreement and refund to Purchaser all payments made by Purchaser. Seller reserves the right, in its sole discretion, to sell or assign the Note and the Seller Security Interest to another person or entity, whether or not such person or entity is affiliated with Seller.

(c) If Purchaser is exchanging a fee simple timeshare interest in a timeshare resort ("Fee Timeshare Interest") as full or partial payment for the Membership, Purchaser agrees to execute and deliver to Seller, on the date hereof, a deed or other appropriate instrument in form and substance satisfactory to Seller, in its sole discretion, pursuant to which all of Purchaser's right, title, and interest in and to the Fee Timeshare Interest is conveyed to Seller or a party designated by Seller, free and clear of any liens or encumbrances not expressly approved by Seller ("Deed-back"), and if Seller so requests, a declaration of annexation or other similar type of document subjecting the Fee Timeshare Interest to the Declaration ("Annexation Instrument"). Such Deed-back and Annexation Instrument may be recorded by Seller upon Closing. Pending Closing,

Purchaser shall remain fully liable for all costs, expenses, and other obligations of any and every kind related to the Fee Timeshare Interest ("Fee Timeshare Interest Obligations"). If the transaction contemplated hereby fails to close for any reason whatsoever, the Deed-back and Annexation Instrument will be canceled and returned to Purchaser, and Purchaser will remain fully liable for the Fee Timeshare Interest Obligations.

(d) If (i) Purchaser already owns a timeshare interest (the "Existing Timeshare Interest") that her or she acquired from Seller or an affiliate of Seller (collectively, "Diamond Resorts"); and (ii) Diamond Resorts financed a portion of the purchase price of the Existing Timeshare Interest, then Seller may (but shall not be obligated to) cause Diamond Resorts to cancel the promissory note made by Purchaser to the order of Diamond Resorts as of Closing, in which case the outstanding principal balance of such promissory note, together with any accrued but unpaid interest due thereon, shall be added to the original principal amount of the note, subject to all of the terms, provisions, and conditions of Section 2 hereof. In addition, if Seller so requests, Purchaser agrees to execute and deliver to Seller, on the date hereof, a declaration of annexation or other similar type of document, pursuant to which the Existing Timeshare Interest is subjected to the Declaration (the "Diamond Resorts Annexation Instrument"). Such Diamond Resorts Annexation Instrument may be recorded by Seller upon Closing. If the transaction contemplated hereby fails to close for any reason whatsoever, the Diamond Resorts Annexation Instrument will be returned to Purchaser. Whether or not such transaction closes, Purchaser shall remain fully liable for all costs, expenses, and other obligations of any and every kind related to the Existing Timeshare Interest

(e) In the event that the Note, this Agreement, or the Deed-back and Annexation Instrument (if applicable), or any other document or instrument which evidences or secures payment of the Purchase Price, is misplaced or has not been completely and validly executed by Purchaser for any reason whatsoever, Seller shall have the option, in its sole discretion, to cancel this Agreement at any time prior to Closing; or to send Purchaser whatever document(s) and/or instrument(s) that Seller needs Purchaser to re-execute, along with instructions on how to do so. In the event that Seller elects to cancel this Agreement, Seller shall provide written notice thereof to Purchaser and cause any funds held on Purchaser's behalf, without interest, to be refunded by Escrow Agent (defined below), to Purchaser, in which event this Agreement shall be deemed terminated and of no further force or legal effect. In the event Seller sends Purchaser any document or instrument for re-execution, Purchaser shall promptly re-execute same, cause his or her signature to be notarized (to the extent indicated), and return such document(s) and/or instrument(s) to Seller in accordance with Seller's written instructions. Purchaser's failure to do so for any reason within 10 calendar days following Purchaser's receipt thereof shall constitute a default hereunder, entitling Seller to exercise its available rights and remedies pursuant to Section 14 below.

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR.

3. **SELLER'S RIGHT TO ACCEPT OR REJECT THIS AGREEMENT:**

It is understood that Seller can accept or reject this Agreement. If Seller rejects this Agreement, Purchaser is only entitled to a refund of any payments made by Purchaser, without interest. This Agreement becomes effective and legally binding only when executed by both Parties. If Seller accepts this Agreement, then Seller, subject to Section 2 above, agrees to sell the Membership to Purchaser, and Purchaser agrees to make all of the payments required to be made under this Agreement when due and otherwise to comply fully with all of the terms, provisions, and conditions hereof and of the Collection Instruments.

4. **DEPOSITS:**

Purchaser's initial deposit and any subsequent payments made by Purchaser to Seller prior to Closing shall be delivered to and held in escrow by First American Title Insurance Company, the address of which is 1160 Town Center Drive, Suite 100, Las Vegas, Nevada 89144 ("Escrow Agent"), pursuant to a Master Escrow Agreement by and between Seller and Escrow Agent, the terms, provisions, and conditions of which are incorporated by this reference. Any and all interest that accrues on Purchaser's deposit and subsequent payments shall, except to the extent prohibited by law, be payable to and inure to the sole benefit of Seller and not be credited toward the Purchase Price. Escrow Agent shall hold all such deposits and other amounts until presentation by Seller of written instructions to the effect that Closing has occurred. Escrow Agent will not disburse funds to Seller until the requirements of California Business and Profession Code, Section 11243 have been met. Seller shall have no right to use any of the funds held by Escrow Agent until such funds have been delivered to Seller in accordance with the provisions hereof.

5. **VACATION OWNERSHIP PLAN:**

(a) The Membership is a form of a "right-to-use" timeshare interest, and Purchaser will not receive a deed to any interest in real property.

(b) Purchaser acknowledges that notwithstanding any provision of this Agreement or the Collection Instruments, unless Purchaser is purchasing Specific Use Points, Purchaser will not have the guaranteed exclusive right to reserve, use, and occupy any particular Collection Accommodation. Purchase acknowledges that the Membership is subject to the Collection Instruments as amended and/or supplemented from time to time.

(c) The Collection shall be perpetual unless terminated by the Members in the manner described in the Collection Instruments.

(d) Purchaser may be prohibited from making a reservation or using and occupying a Collection Accommodation unless Purchaser has timely paid any and all Assessments, Personal Charges and other amounts levied pursuant to the Collection Instruments and otherwise fully complied with all of the terms, provisions, and conditions of the Collection Instruments.

6. **ASSOCIATION MEMBERSHIP AND TRANSFER:**

Upon Closing, Purchaser will automatically become a Member of the Association. Purchaser agrees to be subject to and to comply fully with the Collection Instruments. If the number of a Member's annual allotment of Points falls below the Minimum Points Threshold for any reason, such as the partial transfer of Points or expiration of Term Points, the affected Membership will cease to be a valid Membership unless sufficient additional Points are acquired to meet the Minimum Points Threshold. The current Minimum Points Threshold for a valid Membership is 2,000 Points. Any purchase of additional Points will be governed by prices in effect at the time of purchase. Purchaser's right to sell or otherwise transfer his or her Membership and the resulting update to the Register of Members is subject to prior approval by the Association and certain other applicable requirements set forth in the Collection Instruments.

7. **ASSESSMENTS:**

(a) Purchaser understands and agrees that in accordance with the provisions of the Collection Instruments, the Association is empowered to levy and collect Assessments against each Membership for management and maintenance expenses. In addition to Assessments, Purchaser understands and agrees that he or she will be responsible for the timely payment to the Association of any Personal Charges or other charges that he or she incurs, all in accordance with the provisions of the Collection Instruments. Assessments shall be due and payable to the Association prior to Purchaser's use and occupancy of a Collection Accommodation in Purchaser's Initial Use Year, as set forth on Page 1 hereof. The amount of the Assessments each year may vary and will be determined as outlined in the Collection Instruments.

(b) The Association may enforce Purchaser's obligation to pay Assessments and Personal Charges in the manner set forth in this Agreement and in the Collection Instruments or as otherwise permitted by law. Purchaser may be prohibited from reserving, using, or occupying any Collection Accommodation or exercising any other rights, benefits, or privileges to which Purchaser would otherwise be entitled pursuant to the Collection Instruments, unless all Assessments and other amounts that Purchaser owes the Association or Seller have first been paid in full. Purchaser's failure for any reason to pay on a timely basis any and all Assessments could result in the enforcement of the Association Security Interest (defined below) by the Association and the loss of Purchaser's Membership. Purchaser's failure for any reason to use and occupy a Collection Accommodation shall not exempt Purchaser from his or her obligation to pay in full all Assessments levied against his or her Membership.

8. **EXCHANGE PROGRAMS:**

The Association has entered into an Affiliation Agreement (the "Affiliation Agreement") with Diamond Resorts International Club, Inc. ("DRIC"). Under the Affiliation Agreement, the Association and the Collection are affiliated with THE Club®. Purchaser's membership in THE Club® is automatic and is subject to the annual payment of fees that are imposed by DRIC and are subject to change in DRIC's sole discretion. The Affiliation Agreement permits the annual membership fee for THE Club® to be collected by the Association along with the Assessments. Purchaser should refer to the Association budget for more details. Under the Affiliation Agreement, membership in THE Club® may not be transferred without the consent of DRIC and transfer by Purchaser of the Membership in the Collection does not, without the consent of DRIC, have the effect of transferring membership in THE Club®. THE Club® may, but is not obligated to, have a relationship with an external exchange program. At the current time, THE Club® is affiliated with Interval International, Inc. ("Interval International") under which Interval International has agreed to offer its reciprocal exchange services to members of THE Club®. Exchanges through external exchange programs may be subject to certain terms, conditions and the payment of fees that are imposed by the external exchange program. Seller makes no representations concerning THE Club®, Interval International, or any other exchange programs that may become affiliated with the Collection, including but not limited to current or future services to be provided, the cost, continued availability, or success of exchange programs. Any representations made regarding THE Club® or Interval International by DRIC or its agents or employees or within the literature, brochures, or videos prepared or provided by DRIC or Interval International are solely the representations of DRIC or Interval International, respectively, and should not be relied upon as being the representations of Seller.

9. **CLOSING:**

Except as otherwise provided by applicable law, for purposes of this Agreement, the term "Closing" shall mean that date when all of the following have occurred: the cancellation period set forth in Section 21 has expired without Purchaser having exercised his or her rescission right; Purchaser and Seller have executed, as applicable, all documents necessary to effect transfer of the Membership to Purchaser including, but not limited to, this Agreement, and if applicable, the Note; Seller has received from Purchaser either (a) an executed Note for the Unpaid Balance, or (b) the Unpaid Balance in immediately available funds; and the Purchaser has been entered into the Register of Members. Except as otherwise expressly provided in any of the Collection Instruments to the contrary, Purchaser may not reserve, use, or occupy any Collection Accommodation or exercise any other rights, benefits, or privileges appurtenant to his or her Membership until Closing occurs. If Closing has not occurred within one year following the date of this Agreement or on the date that has been otherwise agreed to by the parties, then Seller will, within fifteen days thereof, order any funds held on Purchaser's behalf, without interest, to be refunded by Escrow Agent to Purchaser, in which event this Agreement shall be deemed terminated and of no further force or legal effect. Escrow Agent shall act as the closing agent for the purposes of collecting and disbursing all applicable funds and distributing and filing all applicable documents and instruments. Upon Closing, Seller shall deliver to Purchaser a Points Certificate evidencing the Purchaser's Membership and a fully executed copy of this Agreement.

10. **TITLE AND TITLE INSURANCE:**

All Collection Accommodations have been constructed and are available for use by Members pursuant to the Collection Instruments. Purchaser understands and acknowledges that the basis for the Membership is certain real property interests (called "Resort Interests") in various resorts, hotels and other vacation properties and that title to those interests is held in a trust (the "Trust") for the benefit of the Association and Members pursuant to a recorded Trust Agreement with First American Trust, FSB, a federal savings bank or another independent trustee ("Trustee"). Resort Interests are conveyed to the Trust subject to the Trust Agreement and Declaration and are otherwise not encumbered with blanket liens of any lender or lienholder or have a nondisturbance agreement in place which fully protects the use and enjoyment rights of each Member in the event of foreclosure. Further, in connection with each conveyance of Resort Interests to the Trust, Seller has caused First American Title Insurance Company to issue in favor of the Association, where available, an ALTA Owners Title Insurance Policy insuring the Trustee's ownership of the Resort Interests. Copies of such Owners Title Insurance Policies are available for inspection by Members at the offices of the Association.

11. **SECURITY INTERESTS:**

(a) **Seller's Security Interest.** If Seller is providing Financing to Purchaser in connection with the purchase of the Membership, then Purchaser, as debtor, hereby grants to Seller, as secured party, effective as of Closing, a purchase money security interest (the "Seller Security Interest") in the Membership and in all rights, benefits and privileges appurtenant thereto as established in the Collection Instruments and all rights, benefits and privileges accruing thereto in the future, all replacements and additions to the foregoing, and all proceeds thereof (collectively, the "Collateral") to secure Purchaser's performance under the Note, this Agreement, and the Collection Instruments. No waiver by Seller or any holder of this Agreement of any default or breach by Purchaser shall operate as a waiver of any other default or breach, whether of the same type or not, by Purchaser.

(b) **Association's Security Interest.** Purchaser, as debtor, hereby grants to Association, as secured party, effective as of Closing, a security interest (the "Association Security Interest") in the Collateral to secure Purchaser's timely payment of Assessments and Personal Charges and Purchaser's performance under the Collection Instruments. The Association Security Interest shall, at all times, be junior and subordinate to the Seller Security Interest.

(c) **Financing Statements.** Purchaser irrevocably authorizes Seller and the Association, at any time and from time to time, to file in any Uniform Commercial Code ("UCC") jurisdiction initial financing statements and any amendments thereto that provide any other information required by Part 5 of Article 9 of the UCC of the applicable jurisdiction for the sufficiency, or filing office acceptance of, any financing statement or amendment, including Purchaser's name and address, and if Purchaser is not an individual, Purchaser's type of organization and any organizational identification number issued to Purchaser. Purchaser shall furnish any such information in writing to Seller or the Association, as the case may be, within five (5) days after Seller's or Association's request. Each person identified as Purchaser in this Agreement represents and warrants to Seller and the Association that on the date of this Agreement he or she is domiciled in the state identified below his or her signature on this Agreement. Each person identified as a Purchaser in this Agreement shall notify Seller and the Association in writing if he or she changes his or her state of domicile within 30 days after such change. Such notice shall identify the state of such person's new domicile and his or her residential address therein.

(d) **Association as Third-Party Beneficiary.** Solely for purposes of this Section 11, the Association is an intended third-party beneficiary of this Agreement and is entitled to enforce the Association Security Interest granted by Purchaser hereunder.

12. **PURCHASER'S REPRESENTATIONS, WARRANTIES, AND ACKNOWLEDGMENTS:**

(a) Purchaser represents and warrants that the persons signing this Agreement have the legal capacity and are duly authorized to do so. Purchaser represents and warrants that Purchaser is not, and shall not become, a person with whom Seller is restricted from doing business with under the regulations of the Department of Treasury Office of Foreign Asset Control ("OFAC"). Such representation shall include, but not be limited to, a the representation that Purchaser is not a person or entity and is not acting on behalf of a person or entity named on OFAC's Specifically Designated Nationals and Blocked Persons list and Purchaser is not a resident or national of any Embargoed Country, as defined by OFAC. Purchaser acknowledges that prior to signing this Agreement, Purchaser received the state timeshare disclosure documents, together with the attached exhibits, all of which are hereby incorporated by this reference, and Purchaser agrees to be strictly bound by, and to comply fully with, the terms, provisions, and conditions of such documents, as each may properly be amended or supplemented from time to time. In the event of any conflict between this Agreement and the state timeshare disclosures, the state timeshare disclosures shall control. Purchaser further acknowledges and represents that the Membership is being purchased for Purchaser's personal use and not for its investment potential or any possible rent returns, tax advantages, depreciation, or other financial advantages and that no representations of any nature whatsoever have been made by Seller or any of its salespersons or other agents to Purchaser concerning investment potential, rent returns, tax advantages, depreciation, or other financial advantages. Purchaser, including any person or entity related to Purchaser, does not own an interest in more than 10 Memberships in the Collection. Purchaser understands that Seller has no resale or rental program for non-Seller owned Memberships and acknowledges that neither Seller nor any of its sales agents, employees, or other representatives has indicated that Purchaser will be assisted in the resale or rental of his or her Membership in the future. Purchaser represents that Purchaser does not intend to use any Collection Accommodation as his or her principal residence. If Purchaser has received Financing, then Purchaser acknowledges receipt of a completed Truth-in-Lending Disclosure Statement prior to executing this Agreement. Purchaser hereby agrees to indemnify and hold Seller harmless from and against any and all loss, threat of loss, suits, claims, actions, liabilities, damages, obligations, demands, costs and expenses

(including attorney's fees) arising out of or in connection with any breach by Purchaser's representations and warranties. All of Purchaser's acknowledgments, representations and warranties set forth herein shall survive Closing.

   (b)   Purchaser acknowledges and agrees that immediately following Closing, Seller shall have no further obligations or liabilities of any kind under this Agreement, or under any other document or instrument referred to in this Agreement, and Purchaser shall look solely to the Association and the Manager, together with any other entities that from time to time become obligated to Purchaser as provided in the Collection Instruments, for the fulfillment and satisfaction of any of Purchaser's rights, benefits, and privileges as a Member of the Collection, and not to Seller.

13.   **NO WARRANTIES:**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, OR BY APPLICABLE LAW, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE WHATSOEVER REGARDING THE COLLECTION OR THE COLLECTION ACCOMMODATIONS, INCLUDING BUT NOT LIMITED TO WARRANTIES OF HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. SELLER EXPRESSLY DISCLAIMS, AND PURCHASER IRREVOCABLY WAIVES, EACH OF THE FOREGOING WARRANTIES.

14.   **DEFAULT:**

   (a)   Subject to any notice and right to cure provided below, Purchaser shall be in default under this Agreement if Purchaser fails to pay on time, keep any promise, or fulfill any agreement or obligation contained in the Note, this Agreement or any of the Collection Instruments. In the event of a default by Purchaser, Purchaser shall not be entitled to reserve, use, or occupy any Collection Accommodation, or to exercise any other rights, benefits, or privileges appurtenant to his or her Membership.

   (b)   By placing their initials immediately below, the Parties agree that: Purchaser's default on or before Closing shall entitle Seller to immediately terminate this Agreement and all of Purchaser's rights, benefits, and privileges hereunder. Upon such termination, Seller shall retain or cause Escrow Agent to deliver to Seller, out of Purchaser's Total Down Payment, the lesser of: (a) all sums of money previously paid by Purchaser hereunder; or (b) 3% of the Purchase Price as liquidated damages and not as a penalty. The payment of such liquidated damages shall constitute the exclusive remedy of Seller on account of the default by Purchaser.

PURCHASER _[initials]_          PURCHASER _____

PURCHASER _[initials]_          PURCHASER _____

SELLER _[initials]_

Procedure for Releasing Liquidated Damages to Seller. At any time after the date provided herein for Closing, or any extension thereof, Seller shall give written notice to Escrow Agent and to Purchaser in the manner prescribed by Section 116.340 of the California Code of Civil Procedure for service in a small claims action, Seller's determination that Purchaser is in default under this Agreement and that Seller is demanding that Escrow Agent remit from the Total Down Payment the dollar amount described above, which amount shall be specified in the notice, to Seller as liquidated damages unless Purchaser gives written notice to Escrow Agent that Purchaser objects to disbursement of said dollar amount as liquidated damages within 20 days. Subject to the terms and provisions of the Escrow Agreement, if Escrow Agent does not receive the written notice of objection from Purchaser within 20 days from the date of Purchaser's receipt of the notice from Seller, Escrow Agent shall remit the aforesaid liquidated damages to Seller. If Purchaser does give such written objection to Escrow Agent within 20 days from the date of Purchaser's receipt of the notice from Seller, then the determination as to whether Seller is entitled to the specified dollar amount as liquidated damages and every other cause of action that has arisen between Purchaser and Seller under this Agreement shall be settled by arbitration as described below.

Except for a disbursement made following substantial compliance with the procedures set forth in this Section 14 or pursuant to a written agreement of the parties that either cancels the contract or is executed after the final closing date specified by the parties, a disbursement or charge against purchase money as liquidated damages may be done only pursuant to a determination by an arbitrator in accordance with this Agreement, that the developer is entitled to a disbursement or charge against purchase money as liquidated damages.

   (c)   Upon Purchaser's failure to timely perform any of Purchaser's obligations under the Note, this Agreement or any of the Collection Instruments after Closing, Purchaser shall be in default hereunder, whereupon Seller (or its successor or assign) may enforce the Seller Security Interest against the Collateral in accordance with this Subparagraph. Upon the occurrence of any such failure, including the non-payment of any amounts due and owing by Purchaser under the Collection Instruments, Seller shall give Purchaser written notice and if Purchaser has not cured the applicable failure within 20 days after Seller gives such notice if Purchaser has failed to pay money, or within 30 days after Seller gives such notice if Purchaser has failed to perform or observe any other term of the Note, this Agreement or any of the Collection Instruments, Purchaser shall be in default under this Agreement and Seller (or its successor or assign) may enforce the Seller Security Interest in accordance with Article 9 of the UCC; provide written notice of termination of the Membership and terminate the Membership within 60 days of the date of the notice of termination and retain all amounts previously paid by Purchaser as liquidated

(including attorney's fees) arising out of or in connection with any breach by Purchaser's representations and warranties. All of Purchaser's acknowledgments, representations and warranties set forth herein shall survive Closing.

(b) Purchaser acknowledges and agrees that immediately following Closing, Seller shall have no further obligations or liabilities of any kind under this Agreement, or under any other document or instrument referred to in this Agreement, and Purchaser shall look solely to the Association and the Manager, together with any other entities that from time to time become obligated to Purchaser as provided in the Collection Instruments, for the fulfillment and satisfaction of any of Purchaser's rights, benefits, and privileges as a Member of the Collection, and not to Seller.

13. **NO WARRANTIES:**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, OR BY APPLICABLE LAW, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE WHATSOEVER REGARDING THE COLLECTION OR THE COLLECTION ACCOMMODATIONS, INCLUDING BUT NOT LIMITED TO WARRANTIES OF HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. SELLER EXPRESSLY DISCLAIMS, AND PURCHASER IRREVOCABLY WAIVES, EACH OF THE FOREGOING WARRANTIES.

14. **DEFAULT:**

(a) Subject to any notice and right to cure provided below, Purchaser shall be in default under this Agreement if Purchaser fails to pay on time, keep any promise, or fulfill any agreement or obligation contained in the Note, this Agreement or any of the Collection Instruments. In the event of a default by Purchaser, Purchaser shall not be entitled to reserve, use, or occupy any Collection Accommodation, or to exercise any other rights, benefits, or privileges appurtenant to his or her Membership.

(b) By placing their initials immediately below, the Parties agree that: Purchaser's default on or before Closing shall entitle Seller to immediately terminate this Agreement and all of Purchaser's rights, benefits, and privileges hereunder. Upon such termination, Seller shall retain or cause Escrow Agent to deliver to Seller, out of Purchaser's Total Down Payment, the lesser of: (a) all sums of money previously paid by Purchaser hereunder; or (b) 3% of the Purchase Price as liquidated damages and not as a penalty. The payment of such liquidated damages shall constitute the exclusive remedy of Seller on account of the default by Purchaser.

PURCHASER _____    PURCHASER _____

PURCHASER _____    PURCHASER _____

SELLER _____

Procedure for Releasing Liquidated Damages to Seller. At any time after the date provided herein for Closing, or any extension thereof, Seller shall give written notice to Escrow Agent and to Purchaser in the manner prescribed by Section 116.340 of the California Code of Civil Procedure for service in a small claims action, Seller's determination that Purchaser is in default under this Agreement and that Seller is demanding that Escrow Agent remit from the Total Down Payment the dollar amount described above, which amount shall be specified in the notice, to Seller as liquidated damages unless Purchaser gives written notice to Escrow Agent that Purchaser objects to disbursement of said dollar amount as liquidated damages within 20 days. Subject to the terms and provisions of the Escrow Agreement, if Escrow Agent does not receive the written notice of objection from Purchaser within 20 days from the date of Purchaser's receipt of the notice from Seller, Escrow Agent shall remit the aforesaid liquidated damages to Seller. If Purchaser does give such written objection to Escrow Agent within 20 days from the date of Purchaser's receipt of the notice from Seller, then the determination as to whether Seller is entitled to the specified dollar amount as liquidated damages and every other cause of action that has arisen between Purchaser and Seller under this Agreement shall be settled by arbitration as described below.

Except for a disbursement made following substantial compliance with the procedures set forth in this Section 14 or pursuant to a written agreement of the parties that either cancels the contract or is executed after the final closing date specified by the parties, a disbursement or charge against purchase money as liquidated damages may be done only pursuant to a determination by an arbitrator in accordance with this Agreement, that the developer is entitled to a disbursement or charge against purchase money as liquidated damages.

(c) Upon Purchaser's failure to timely perform any of Purchaser's obligations under the Note, this Agreement or any of the Collection Instruments after Closing, Purchaser shall be in default hereunder, whereupon Seller (or its successor or assign) may enforce the Seller Security Interest against the Collateral in accordance with this Subparagraph. Upon the occurrence of any such failure, including the non-payment of any amounts due and owing by Purchaser under the Collection Instruments, Seller shall give Purchaser written notice and if Purchaser has not cured the applicable failure within 20 days after Seller gives such notice if Purchaser has failed to pay money, or within 30 days after Seller gives such notice if Purchaser has failed to perform or observe any other term of the Note, this Agreement or any of the Collection Instruments, Purchaser shall be in default under this Agreement and Seller (or its successor or assign) may enforce the Seller Security Interest in accordance with Article 9 of the UCC; provide written notice of termination of the Membership and terminate the Membership within 60 days of the date of the notice of termination and retain all amounts previously paid by Purchaser as liquidated


(including attorney's fees) arising out of or in connection with any breach by Purchaser's representations and warranties. All of Purchaser's acknowledgments, representations and warranties set forth herein shall survive Closing.

    (b)    Purchaser acknowledges and agrees that immediately following Closing, Seller shall have no further obligations or liabilities of any kind under this Agreement, or under any other document or instrument referred to in this Agreement, and Purchaser shall look solely to the Association and the Manager, together with any other entities that from time to time become obligated to Purchaser as provided in the Collection Instruments, for the fulfillment and satisfaction of any of Purchaser's rights, benefits, and privileges as a Member of the Collection, and not to Seller.

13. **NO WARRANTIES:**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, OR BY APPLICABLE LAW, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE WHATSOEVER REGARDING THE COLLECTION OR THE COLLECTION ACCOMMODATIONS, INCLUDING BUT NOT LIMITED TO WARRANTIES OF HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. SELLER EXPRESSLY DISCLAIMS, AND PURCHASER IRREVOCABLY WAIVES, EACH OF THE FOREGOING WARRANTIES.

14. **DEFAULT:**

    (a)    Subject to any notice and right to cure provided below, Purchaser shall be in default under this Agreement if Purchaser fails to pay on time, keep any promise, or fulfill any agreement or obligation contained in the Note, this Agreement or any of the Collection Instruments. In the event of a default by Purchaser, Purchaser shall not be entitled to reserve, use, or occupy any Collection Accommodation, or to exercise any other rights, benefits, or privileges appurtenant to his or her Membership.

    (b)    By placing their initials immediately below, the Parties agree that: Purchaser's default on or before Closing shall entitle Seller to immediately terminate this Agreement and all of Purchaser's rights, benefits, and privileges hereunder. Upon such termination, Seller shall retain or cause Escrow Agent to deliver to Seller, out of Purchaser's Total Down Payment, the lesser of: (a) all sums of money previously paid by Purchaser hereunder; or (b) 3% of the Purchase Price as liquidated damages and not as a penalty. The payment of such liquidated damages shall constitute the exclusive remedy of Seller on account of the default by Purchaser.

PURCHASER _[signature]_        PURCHASER _____

PURCHASER _[signature]_        PURCHASER _____

SELLER _[signature]_

Procedure for Releasing Liquidated Damages to Seller. At any time after the date provided herein for Closing, or any extension thereof, Seller shall give written notice to Escrow Agent and to Purchaser in the manner prescribed by Section 116.340 of the California Code of Civil Procedure for service in a small claims action, Seller's determination that Purchaser is in default under this Agreement and that Seller is demanding that Escrow Agent remit from the Total Down Payment the dollar amount described above, which amount shall be specified in the notice, to Seller as liquidated damages unless Purchaser gives written notice to Escrow Agent that Purchaser objects to disbursement of said dollar amount as liquidated damages within 20 days. Subject to the terms and provisions of the Escrow Agreement, if Escrow Agent does not receive the written notice of objection from Purchaser within 20 days from the date of Purchaser's receipt of the notice from Seller, Escrow Agent shall remit the aforesaid liquidated damages to Seller. If Purchaser does give such written objection to Escrow Agent within 20 days from the date of Purchaser's receipt of the notice from Seller, then the determination as to whether Seller is entitled to the specified dollar amount as liquidated damages and every other cause of action that has arisen between Purchaser and Seller under this Agreement shall be settled by arbitration as described below.

Except for a disbursement made following substantial compliance with the procedures set forth in this Section 14 or pursuant to a written agreement of the parties that either cancels the contract or is executed after the final closing date specified by the parties, a disbursement or charge against purchase money as liquidated damages may be done only pursuant to a determination by an arbitrator in accordance with this Agreement, that the developer is entitled to a disbursement or charge against purchase money as liquidated damages.

    (c)    Upon Purchaser's failure to timely perform any of Purchaser's obligations under the Note, this Agreement or any of the Collection Instruments after Closing, Purchaser shall be in default hereunder, whereupon Seller (or its successor or assign) may enforce the Seller Security Interest against the Collateral in accordance with this Subparagraph. Upon the occurrence of any such failure, including the non-payment of any amounts due and owing by Purchaser under the Collection Instruments, Seller shall give Purchaser written notice and if Purchaser has not cured the applicable failure within 20 days after Seller gives such notice if Purchaser has failed to pay money, or within 30 days after Seller gives such notice if Purchaser has failed to perform or observe any other term of the Note, this Agreement or any of the Collection Instruments, Purchaser shall be in default under this Agreement and Seller (or its successor or assign) may enforce the Seller Security Interest in accordance with Article 9 of the UCC; provide written notice of termination of the Membership and terminate the Membership within 60 days of the date of the notice of termination and retain all amounts previously paid by Purchaser as liquidated

damages and not as a penalty; or pursue any other remedy available to Seller, at law or in equity, however, Seller hereby confirms that it will not seek any deficiency judgment against defaulting Purchaser beyond the forfeiture of the Membership.

(d) Notwithstanding the foregoing provisions of this Section 10 to the contrary, if, for any reason, Seller is unable or fails to comply with the material provisions of this Agreement, then the sole obligation of Seller shall be to refund or cause Escrow Agent to refund (whichever is applicable) to Purchaser all payments previously made by Purchaser hereunder, without interest. Upon such refunds being made, this Agreement shall be deemed canceled, and all rights and obligations hereunder shall immediately terminate. TO THE EXTENT PERMITTED BY APPLICABLE LAW, PURCHASER HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES THAT MIGHT OTHERWISE BE AVAILABLE TO PURCHASER, AT LAW OR IN EQUITY.

15. **NO OTHER AGREEMENTS OR REPRESENTATIONS:**

Seller and Purchaser agree that this Agreement (including the documents and instruments incorporated by reference) embodies the entire agreement between them related to Purchaser's purchase and financing (if applicable) of the Membership and supersedes and replaces any and all prior negotiations, representations, agreements, and understandings, both oral and written, in connection therewith. No amendment to or modification of the terms of this Agreement shall be valid without the written approval of the legal counsel of Seller. Oral representations of Seller or Seller's agents should not be relied upon by Purchaser as correctly stating the representations of Seller. For correct representations, Purchaser should rely entirely on this Agreement and the documents and instruments contained by reference.

16. **ASSIGNMENT AND SEVERABILITY:**

This Agreement shall be binding upon and inure to the benefit of the Parties, their respective heirs, successors, assigns, and personal representatives. Purchaser's Membership cannot be sold, assigned, transferred, conveyed, or encumbered except in accordance with the terms, provisions, and conditions hereof and the Collection Instruments. Purchaser acknowledges that Seller has the right, in its sole discretion, to assign some or all of its rights and interests hereunder and, if applicable, under the Note. Purchaser may not assign any of his or her rights or interests hereunder, without the written consent of Seller, which consent may be withheld in Seller's sole and absolute discretion. The terms and provisions hereof shall be deemed independent and severable, and the invalidity of any one provision or portion thereof shall not affect the validity or enforceability of any other provision hereof.

17. **CHOICE OF STATE LAW AND FORUM; WAIVER OF JURY TRIAL:**

Except to the extent preempted by federal law, this Agreement shall be exclusively governed by and construed in accordance with the laws of Nevada without regard to its choice of law rules. Subject to Section 14 hereof, any legal action or proceeding arising out of or in any way relating to this Agreement which is not subject to the Arbitration provisions outlined below, shall only be brought in an appropriate court of competent jurisdiction on behalf of the Parties and their respective successors and assigns, hereby irrevocably submit to the jurisdiction of any such court and agree that venue properly lies solely in such courts to the exclusion of all other judicial and non-judicial forums. EXCEPT AS OTHERWISE PROVIDED BY APPLICABLE LAW, THE PARTIES, AND ANY OTHER PERSON CLAIMING RIGHTS OR OBLIGATIONS BY, THROUGH, OR UNDER THIS AGREEMENT SHALL BE DEEMED TO HAVE WAIVED ANY RIGHT THEY MAY HAVE UNDER ANY APPLICABLE LAW TO A TRIAL BY JURY IN CONNECTION WITH ANY SUIT OR LEGAL PROCEEDING THAT MAY BE COMMENCED BY OR AGAINST ANY OF THE FOREGOING PERSONS CONCERNING THE INTERPRETATION, CONSTRUCTION, VALIDITY, ENFORCEMENT, OR PERFORMANCE OF THIS AGREEMENT OR ANY OF THE COLLECTION INSTRUMENTS.

18. **ARBITRATION PROVISION**

(a) *Opt-Out Right.* IF PURCHASER DOES NOT WANT THIS ARBITRATION PROVISION TO APPLY, WITHIN 30 DAYS PURCHASER MUST SEND A SIGNED LETTER TO SELLER STATING THAT THE ARBITRATION PROVISION DOES NOT APPLY. OPTING OUT OF ARBITRATION WILL NOT AFFECT ANY OTHER PROVISION OF THIS AGREEMENT.

(b) *Arbitration Terms Defined.* In this Arbitration Provision, the term "Company Party" means Seller and/or the Association, their affiliates and the agents, representatives, members, employees, officers and/or directors of such entities, if and to the extent that any Claim is asserted by or against such entity or person. "Bound Parties" means each Company Party and Purchaser. "Claim" means any legal claim, dispute or controversy between any Company Party and Purchaser, including statutory, contract and tort disputes of all kinds and disputes involving requests for declaratory relief, injunctions or other equitable relief. However, "Claim" does not include any individual action brought by a Purchaser in small claims court or an equivalent court, unless such action is transferred, removed, or appealed to a different court, and does not include any dispute concerning the validity and effect of Section 18(h) below, the ban on class actions and certain other proceedings (the "Class Action Ban"). "Administrator" means the American Arbitration Association ("AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, http://www.adr.org, or if Purchaser so elects in a notice given to Seller (which will serve as notice to each Company Party) within 20 days after a demand for arbitration, the National Arbitration Forum ("NAF"), P.O. Box 50191, Minneapolis, MN 55405, http://www.arb-forum.com.

(c) *Arbitration of Claims.* Unless Purchaser has exercised his or her opt-out right pursuant to Section 18(a) upon the election of Purchaser or any Company Party, any Claim between Purchaser and such Company Party shall be resolved by binding individual (and not class) arbitration. Any arbitration will be conducted in accordance with this Arbitration Provision and, to the extent consistent with this Arbitration Provision, the rules of the Administrator in effect at the time the Claim is filed. The neutral arbitrator shall be appointed within a specified period of time, which in no event shall be more than 60 days from

the administrator's receipt of a written request from a Bound Party to arbitrate the Claim. To the extent this Arbitration Provision conflicts with any other agreement binding the Bound Parties, this Arbitration Provision shall govern.

(d) **Fees; Location.** Any Company Party to a Claim asserted by Purchaser in good faith or to any Claim asserted by such Company Party will bear all fees of the Administrator or arbitrator in connection with such Claim. The Company Party will also bear the reasonable fees and expenses of Purchaser's attorneys if any Claim initiated by Purchaser is resolved in Purchaser's favor. If a participatory arbitration hearing is requested, it will take place in the county where this Agreement was signed or, if the Administrator determines that such location would be unfair to Purchaser, at a location reasonably convenient to Purchaser.

(e) **Governing Law.** This Arbitration Provision shall be governed by the Federal Arbitration Act (the "FAA") and not state arbitration laws, provided that Nevada law shall govern to the extent that state law is relevant under the FAA in determining the enforceability of this Arbitration Provision. The arbitrator shall follow applicable substantive laws, statutes of limitations and privilege rules related to any Claim. The arbitrator shall award the remedies, if any, that would be available in an individual court proceeding if arbitration had not been elected. Upon the timely request of any Bound Party, the arbitrator shall write a brief explanation of the grounds for his or her decision.

(f) **Appeal of Arbitrator's Decision.** Any court with jurisdiction may enter judgment upon the arbitrator's award. The arbitrator's decision will be final and binding, except for any appeal right under the FAA.

(g) **Jury Trial Waiver.** IF A BOUND PARTY ELECTS TO ARBITRATE A CLAIM, NO BOUND PARTY WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM.

(h) **Class Action Ban.** NO BOUND PARTY MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A REPRESENTATIVE, CLASS MEMBER OR OTHERWISE, WITH RESPECT TO ANY CLAIM. NO BOUND PARTY MAY PARTICIPATE IN A PRIVATE ATTORNEY GENERAL PROCEEDING IN COURT OR IN ARBITRATION, WITH RESPECT TO ANY CLAIM. NO CLAIMS INVOLVING THE BOUND PARTIES MAY BE JOINED OR CONSOLIDATED WITH CLAIMS BY OR AGAINST ANY OTHER PERSON. Notwithstanding any language in this Arbitration Provision to the contrary, any dispute about the validity or effect of the above Class Action Ban shall be resolved by a court and not an arbitrator or the Administrator.

(i) **Survival; Severability.** This Arbitration Provision shall survive repayment of all amounts owed under this Agreement or the Note, the cancellation of this Agreement, any bankruptcy and any assignment of Seller's rights under this Agreement and/or the Note. If any part of this Arbitration Provision is unenforceable (other than the Class Action Ban), the remainder of this Arbitration Provision shall still apply. If the Class Action Ban is held to be unenforceable, this Arbitration Provision (other than this sentence) and any other arbitration provision between the Bound Parties shall be null and void in such proceeding, provided that the Company Party shall have the right to appeal any holding that the Class Action Ban is unenforceable.

19. **NOTICES:**

Any notice that either party hereto desires or is required to give the other party under this Agreement shall be in writing and shall be deemed to have been duly given upon the earlier to occur of its actual receipt; 3 business days after being deposited in the United States mail as first class mail, postage prepaid; or 1 business day after being sent via overnight courier service addressed to the applicable party at its address stated herein or at such other address as the receiving party has previously notified the giving party in the manner prescribed in this Section. If Purchaser consists of more than 1 person, then notice to any of them shall be deemed to constitute notice to all of them. Unless and until written notice of an alternative addressee and address is received by the other party, the last addressee and address as stated by written notice or as provided herein, shall be deemed to continue in effect for all purposes hereunder.

20. **MISCELLANEOUS:**

Purchaser is advised to read each and every paragraph very carefully. No term, provision, condition, restriction, agreement, covenant, or obligation contained herein shall be deemed to have been abrogated or waived by reason of any failure by a party hereto to enforce the same, irrespective of the number of violations or breaches thereof that may occur. The exercise of any right or remedy provided by law and/or the provisions of this Agreement shall not preclude the exercise of other consistent rights or remedies unless they are expressly precluded hereby. Purchaser hereby grants Seller the right, in its sole discretion, to correct any scrivener's, typographic, or clerical errors in connection with this Agreement or any documents or instruments related hereto, provided that no such correction adversely affects any rights, benefits, or privileges afforded to Purchaser or materially alters any duties or obligations of Purchaser. Any such corrections shall be initialed by an authorized representative of Seller and shall be legally binding upon Purchaser, together with its successors and assigns, even though not initialed or otherwise acknowledged by Purchaser. All Collection Accommodations have been constructed and are available for use by Members pursuant to the Collection Instruments. Under no circumstances whatsoever shall this Agreement or any portion hereof be recorded in the public records of any county or other jurisdiction. The captions used in this Agreement are for informational purposes only and do not amplify or limit in any way the provisions hereof.

*[Remainder of Page Intentionally Left Blank. Section 21 and Signature Page Follows.]*

17188852

21. **STATE SPECIFIC PROVISIONS:**

<u>Cancellation of this Agreement.</u> YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR OBLIGATION WITHIN SEVEN (7) CALENDAR DAYS OF RECEIPT OF THE PUBLIC REPORT OR AFTER THE DATE YOU SIGN THIS CONTRACT, WHICHEVER DATE IS LATER. IF YOU DECIDE TO CANCEL THIS CONTRACT, YOU MUST NOTIFY[1] SELLER IN WRITING OF YOUR INTENT TO CANCEL. YOUR NOTICE OF CANCELLATION SHALL BE EFFECTIVE UPON THE DATE SENT TO SELLER AND SHOULD BE SENT TO SELLER C/O RESCISSION COORDINATOR, DIAMOND RESORTS FINANCIAL SERVICES, 10600 WEST CHARLESTON BLVD., LAS VEGAS, NV 89135. YOUR NOTICE OF CANCELLATION MAY ALSO BE SENT BY FACSIMILE TO 702-765-8693 OR BY HAND-DELIVERY. ANY ATTEMPT TO OBTAIN A WAIVER OF YOUR CANCELLATION RIGHT IS VOID AND OF NO EFFECT.

While you may execute all closing documents in advance, the closing, as evidenced by entry of your name in the Register of Members of the Association or other document, before expiration of your seven (7) calendar day cancellation period is prohibited.

IN WITNESS WHEREOF, Purchaser has executed this Agreement on the day and year first written above.

**PURCHASER:**

Signature: Rejean Pierre Fournier

Signature: Gisele Fournier

Street Address: 12775 Aveneda Alta Loma

Street Address: _____

City, State, Zip Code: Desert Hot Springs, California 92240

City, State, Zip Code: _____

Home Telephone Number: 760-329-2062

Home Telephone Number: _____

Business Telephone Number: _____

Business Telephone Number: _____

E-Mail Address: gtfournier@msn.com

E-Mail Address: _____

Signature: _____

Signature: _____

**PRIMARY MEMBER:** _____

**SELLER:**
Diamond Resorts U.S. Collection Development, LLC,
a Delaware limited liability company

Primary Member's Address (if not set forth above):

By: Diamond Resorts Developer and Sales Holding Company,
a Delaware corporation, its sole manager.

By: _____
Authorized Representative
Printed Name: MARIA ALCARAZ

Acceptance Date: 7-28-15

Jason - 42502 Payne
Sales Agent (Print)

REV. 6/30/2013_7222014

---

[1] Written notice of cancellation may be delivered to Diamond Resorts Financial Services by any means, including but not limited to certified mail, return receipt requested.

PAGE 9

DMWEST #8065200 v6

Exhibit A
Page 15